UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

AHMON KENSHON SHEFFIELD,

        Petitioner,

vs.                               Case No. 3:14-cv-694-J-39PDB

SECRETARY, DOC, et al.,

        Respondents.

**ORDER**

**I. STATUS**

Petitioner Ahmon Kenshon Sheffield, an inmate of the Florida penal system, challenges a 2011 (Duval County) conviction for trafficking in cocaine. He is represented by counsel. Petitioner is proceeding on a Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Petition) (Doc. 1). He also relies on a Memorandum of Law in Support of Petition Filed Under 28 U.S.C. § 2254 (Memorandum) (Doc. 2). He raises two grounds in the Petition. The Court will address these grounds, see Clisby v. Jones, 960 F.2d 925, 936 (11th Cir. 1992), but no evidentiary proceedings are required in this Court.

Respondents filed an Answer in Response to Order to Show Cause (Response) (Doc. 15). In support of their Response, they provide

an Index to Appendix (Exhibits) (Doc. 15).[1]  Petitioner filed a Reply to State's Response to Petition Filed Under 28 U.S.C. § 2254 (Reply) (Doc. 16).  See Order (Doc. 5).

## II.  STANDARD OF REVIEW

The Court will analyze the claims pursuant to 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act (AEDPA).  "By its terms [28 U.S.C.] § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to th[re]e exceptions." Harrington v. Richter, 562 U.S. 86, 98 (2011).  The three exceptions are: (1) the state court's decision was contrary to clearly established federal law; or (2) there was an unreasonable application of clearly established federal law; or (3) the decision was based on an unreasonable determination of the facts.  Id. at 100.  The Court will give a presumption of correctness of the state courts' factual findings unless rebutted with clear and convincing evidence, 28 U.S.C. § 2254(e)(1), and, the Court will apply this presumption to the factual determinations of both trial and appellate courts.  See Bui v. Haley, 321 F.3d 1304, 1312 (11th Cir. 2003).

---

[1] The Court hereinafter refers to the documents contained in the Appendix as "Ex."  Where provided, the page numbers referenced in this opinion are the Bates stamp numbers at the bottom of each page of the Appendix.  Otherwise, the page number on the particular document will be referenced.  Also, the Court will reference the page numbers assigned by the electronic docketing system where applicable.

### III. FINDINGS OF FACT AND CONCLUSIONS OF LAW

#### A. Ground One

In his first ground, Petitioner claims the trial court erred in denying Petitioner's motion to suppress the physical evidence, and Petitioner contends that he was not afforded full and fair consideration of his claim by the state court. Petition at 5. The record demonstrates that Petitioner filed a Motion to Suppress the physical evidence. Ex. A at 117-22, 135-58. The state submitted a Memorandum of Law. Id. at 159-67. The trial court conducted a hearing and fully considered the testimony of the witnesses and the content of the recorded telephone conversations. Ex. C; Ex. A at 168-72.

As noted by the Supreme Court of the United States, "[t]he Fourth Amendment provides in relevant part that '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated.' It is beyond dispute that a vehicle is an 'effect' as that term is used in the Amendment." United States v. Jones, 132 S.Ct. 945, 949 (2012). Even a brief stop of a motor vehicle by the police constitutes a Fourth Amendment seizure, United States v. Durham, 491 F. App'x 169, 172 (11th Cir. 2012) (per curiam) (citation omitted), but a traffic stop is reasonable if the police have probable cause to stop and search the vehicle.

Although the Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects," including vehicles, from unreasonable searches and seizures, the Fourth Amendment itself does not have an exclusionary rule. Davis v. United States, 564 U.S. 229, 236 (2011). Indeed, exclusion is not an individual's constitutional right, and the prudential doctrine of exclusion is not meant to redress the injury to the individual caused by an unconstitutional search. Id. (citing Stone v. Powell, 428 U.S. 465, 486 (1976)). Instead, the exclusionary rule's sole purpose is to deter future Fourth Amendment violations by the police.

Petitioner's first ground is barred from consideration pursuant to Stone v. Powell, 428 U.S. 465 (1976). Upon a thorough review of the record, the Court finds that Petitioner had a full and fair opportunity to litigate the Fourth Amendment issue and took full advantage of that opportunity. A pre-trial motion to suppress was filed. The matter was fully briefed. A hearing was conducted on the motion to suppress, and the detectives and the confidential informant testified. Additionally, the trial court listened to the recordings of the telephone conversations between Petitioner and the confidential informant. Significantly, the trial court made essential findings of fact. Ex. A at 168-72. See Tukes v. Dugger, 911 F.2d 508, 513-14 (11th Cir. 1990), cert. denied, 502 U.S. 898 (1991) (finding full and fair consideration

requires consideration by the trial court and the availability of meaningful appellate review by the higher state court).  The appellate court affirmed the trial court's decision. Ex. H. See Cisneros v. Sec'y, Dep't of Corr., No. 8:13-cv-449-T-36JSS, 2016 WL 1068486, at *5 (M.D. Fla. March 18, 2016), appeal filed, No. 16-13006 (11th Cir. May 27, 2016) (concluding that the state court made findings "on matters essential to the Fourth Amendment issue[,]" and the petitioner "was provided the opportunity for a full and fair litigation of his Fourth Amendment claim before the state trial and appellate courts.").

Upon review, the trial court made essential findings of fact:

> A.  The Court conducted a hearing on the Defendant's Motion to Suppress on June 30, 2011 and heard testimony from three (3) witnesses, to wit: Detective Moodispaw ("Moodispaw"), a seven (7) year veteran of the Jacksonville Sheriff's Office Narcotics Division with substantial experience dealing with confidential informants and investigating drug trafficking cases; Detective R. Hughey, ("Hughey"), a thirteen (13) year veteran of the Jacksonville Sheriff's Office Narcotics Squad; and Kelly Goldson ("Goldson"), the informant used in this case.
>
> B.  The Defendant, Ahmon Sheffield, was arrested on September 11, 2009 and charged with trafficking in cocaine. At approximately 6:00 p.m. the Defendant, who was driving a white Mercedes and traveling in the direction of his mother's home, was stopped by law enforcement and found to be in possession of two kilograms of cocaine. The Defendant's arrest was the direct result of informant Goldson's cooperation with law enforcement.

C. Goldson became a confidential informant shortly after he was apprehended on September 8, 2009, while in possession of 1 1/2 kilograms of cocaine. Goldson began to cooperate immediately with the Jacksonville Sheriff's Office narcotics detectives in hopes of receiving leniency. Goldson identified the Defendant, Ahmon Sheffield, as an individual from whom he had previously purchased trafficking quantities of cocaine.

D. Because Goldson had never been used as a confidential informant, Moodispaw testified that part of his focus during his conversations with Goldson was to judge his credibility. Moodispaw stated that no promises regarding a sentence were discussed and that if any of Goldson's information proved to be false or misleading he would not continue to work with Goldson. The Detective acknowledged that Goldson was hoping for leniency, but also stated that he appeared to be truthful throughout all their conversations and dealings.

E. Goldson revealed to the detectives that he bought trafficking amounts of cocaine from the Defendant in the past, described the types of cars the Defendant owned and drove and that a recent transaction took place at the Defendant's mother's house. Goldson also provided information in subsequent trafficking and crack cocaine possession cases that proved to be reliable.

F. Pursuant to Goldson's decision to cooperate and based on his belief that he could set up a "deal" with the Defendant quickly, Goldson made contact with the Defendant on September 11, 2009 in an effort to purchase a large amount of cocaine. Some of the conversations between Goldson and the Defendant were in person and not monitored or recorded. Other conversations were made via the telephone and were monitored and recorded.

G. Each time Goldson had a conversation with the Defendant he would immediately relay to Moodispaw the content of the conversation.

Moodispaw personally observed Goldson meet with the Defendant at approximately 1:30 p.m. at Goldson's Confectionary. Surveillance revealed that the Defendant met with Kelvin Blackshear, a known drug trafficker, later in the day and within hours of his [Defendant's] arrest. Additionally, just prior to the Defendant's arrest at 6:00 p.m. on September 11, 2009, Moodispaw monitored three (3) telephone conversations between Goldson and the Defendant. From the time the Narcotics Squad began surveilling the Defendant until his arrest, he was observed driving a white Mercedes, which was one of the vehicles Goldson had described to the Detectives in their initial meeting on September 8, 2009.

    H. Detective Moodispaw acknowledged that Goldson never observed the Defendant in actual possession of any drugs and that the conversations regarding any "deal" were extremely vague and never included language to the extent that the "deal" was for two (2) kilograms of cocaine and the price was $30,000.00 per kilogram. Moodispaw went on to state, however, that it was not unusual for individuals to speak in code or to speak vaguely about such dealings.

    I. During Goldson's testimony the Court noted that he was extremely reluctant to be a witness and give testimony against the Defendant. At points during Goldson's testimony he broke down, cried and indicated that he considered the Defendant to be a friend and did not want to be in this position. Goldson admitted that he was hoping for leniency, but reiterated that he was being truthful and had no reason to lie.

    J. Goldson admitted that there was never a specific price nor an exact amount of drugs discussed. Goldson further acknowledged that he bought drugs from the Defendant on several prior occasions, always in the kilogram amount and that during the most recent transaction, which took place outside the Defendant's mother's home, the Defendant retrieved the drugs from his car.

      K.  As Goldson is an informant of untested reliability, this Court must determine whether the information he proved to law enforcement was sufficiently reliable to establish probable cause to stop and search the Defendant's vehicle.[2]

      L.  In that regard, the Court finds that that [sic] Goldson was a friend of the Defendant and had no reason to provide false

---

[2] Petitioner asserts that the trial court improperly relied on the fact that Goldson provided information concerning subsequent trafficking and crack cocaine possession cases that should never have been considered in determining the informant's reliability. Memorandum at 7. In reviewing the trial court's findings, it did initially recognize that there was testimony that Goldson not only provided reliable information in this instance, he provided it in subsequent drug cases. Ex. A at 169. However, when addressing the question of giving credence to the information provided by an informant of untested reliability, in that regard, the court specifically relied on a number of factors to find that the information provided to law enforcement by the informant was sufficiently reliable, and these findings did not include the informant's testimony regarding subsequent drug transactions. Ex. A at 170-71 (finding Goldson was Petitioner's friend, reluctant to testify against Petitioner, with no reason to provide false or misleading information; finding Goldson disinclined to provide false testimony as he hoped to receive leniency for his own charges; finding Goldson had personal knowledge of Petitioner's illicit activities based on prior drug dealings with Petitioner; finding Moodispaw was able to judge Goldson's demeanor and credibility; finding the information provided by Goldson was immediately relayed to the detectives and corroborated by recorded conversations; finding the physical surveillance corroborated the information, including Petitioner's interaction with a known drug dealer; finding any discrepancies explained by the nature of phone calls concerning drug deals, with the parties utilizing code or vague terminology to avoid detection; and finding the recorded conversations between the informant and Petitioner confirmed the commitment to and location of the planned drug transaction). Although the court recognized the fact that the informant provided reliable information concerning subsequent drug transactions, there were specific, essential findings of fact made supporting the court's conclusion that Goldson's information was reliable and independently corroborated, and these particular findings did not include the information concerning subsequent drug transactions that proved reliable.

- 8 -

or misleading information concerning the Defendant's involvement in drug trafficking. In fact, Goldson would be particularly disinclined to provide false or misleading information given his desire to receive leniency on his own charges. Goldson, based on his prior drug dealings with the Defendant, was in a position to have personal knowledge of the Defendant's illicit activities. Moodispaw was able to judge Goldson's demeanor and credibility during the course of their conversations. The information Goldson provided concerning the Defendant's actions and plans were relayed immediately to Moodispaw and were corroborated by recorded telephone conversations.

M. The physical surveillance of the Defendant on September 11, 2009, also corroborated the information Goldson had provided, that the Defendant was someone who trafficked in drugs and was known to and acquainted with another drug trafficker (Blackshear) who was on bond awaiting trial on a pending trafficking case.

N. While the defense argues that there are inconsistencies and/or conflicts between the testimony of Moodispaw and Goldson, it is clear from the Court's observations that Moodispaw and Goldson were being truthful and that any discrepancies are explained by the vague nature of the conversations typically had regarding such a transaction.

O. Lastly, the Court listened to the actual recorded telephone conversations between Goldson and the Defendant. During these conversations, the Defendant tells Goldson the deal will take place at his mother's home and attempts to give him directions as Goldson could not recall exactly where she lived or how to get there. In a subsequent call the Defendant indicated to Goldson that he was en route to his mother's home, to which Goldson replied something to the effect. . . . . "Oh, you are already in motion". The Defendant acknowledged that he was en route, but apparently detected some

> surprise and/or confusion on Goldson's part and asked Goldson if "you want me to come that way?", indicating that he was in possession of the drugs and ready to do the deal at either location. Goldson replied that he did not want to do the deal at his location but would meet the Defendant at the Defendant's mother's home.

Ex. A at 168-71.

In this instance, the trial court took into account the totality of the circumstances presented. The court found "after reviewing all the testimony presented and considering the totality of the circumstances that Goldson's information was reliable, there was independent corroboration of the information developed during the investigation through law enforcement's observations and recorded telephone conversations, and that law enforcement had probable cause to stop and search the Defendant's vehicle." Id. at 171.

Ground one is not cognizable in a federal habeas corpus proceeding because Petitioner had a full and fair opportunity to litigate the Fourth Amendment issue and took full advantage of that opportunity. The trial court made explicit findings on matters essential to the Fourth Amendment issue. See Hearn v. Florida, 326 F. App'x 519, 522 (11th Cir. 2009) (per curiam) (finding the district court erred in concluding that Stone foreclosed review of the claim because the state court failed to make essential findings of fact). Under the principles of Stone v. Powell, federal habeas review of Petitioner's claim is precluded. See Streets v. Sec'y

Dep't of Corr., No. 8:10-cv-1131-T-33TGW, 2011 WL 3171263, at *12 (M.D. Fla. July 27, 2011) (finding "Stone bars federal habeas review" of the Fourth Amendment claim when "Florida clearly afforded [Petitioner] a full and fair opportunity to litigate" his claim); Mincey v. Head, 206 F.3d 1106, 1125-26 (11th Cir. 2000), cert. denied, 532 U.S. 926 (2001).  Thus, ground one, asserting a Fourth Amendment violation, is barred and will not be addressed by this Court.

In the alternative, AEDPA deference should be given to the state court determination.  Petitioner presented the Fourth Amendment claim to the trial court and the trial court denied the motion to suppress finding that the state established that the search and seizure in question was legal, after conducting a very thorough hearing. Ex. C at 8-110.  Detectives Robert Moodispaw and Richard Hughey testified, as well as Kelly Goldson, the confidential informant.

The circuit court denied this ground, and the First District Court of Appeal affirmed.  The adjudication of the state court resulted in a decision that involved a reasonable application of clearly established federal law, as determined by the United States Supreme Court.  Therefore, Petitioner is not entitled to relief on this claim because the state court's decision was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the

evidence presented in the state court proceedings. Thus, ground one is due to be denied.

### B. Ground Two

In his second ground, Petitioner claims the trial court erred in denying his motion to dismiss. The record shows that Petitioner filed a motion to dismiss, moving the trial court to dismiss the information based on the reasoning in <u>Shelton v. Sec'y, Dep't of Corr.</u>, 802 F.Supp.2d 1289 (M.D. Fla. 2011) (<u>Shelton I</u>) (finding Florida's Comprehensive Drug Abuse Prevention and Control Act, Chapter 893, Fla. Stat., facially unconstitutional). Ex. A at 175-88. Petitioner admits that under controlling case law, the statute has been found to be facially constitutional. Memorandum at 10; Reply at 6. Petitioner seeks to preserve this claim, apparently hoping that the matter will be reviewed by the United States Supreme Court and a favorable decision rendered. <u>See</u> Ex. G at 10-11.

Upon review of the relevant case law, the Eleventh Circuit and the Supreme Court of Florida rejected the holding in <u>Shelton I</u>, finding "Florida's Comprehensive Drug Abuse Prevention and Control Act, Chapter 893, *Fla. Stat.,* facially constitutional." <u>Alvarez v. Crews</u>, No. 13-60664-CIV, 2014 WL 29592, at *6 (S.D. Fla. Jan. 3, 2014) (citing <u>Shelton v. Sec'y, Dep't of Corr.</u>, 691 F.3d 1348 (11th Cir. 2012) (<u>Shelton II</u>) and <u>State v. Adkins</u>, 96 So.3d 412 (Fla. 2012)). Neither case (<u>Shelton II</u> or <u>Adkins</u>) has been reversed, vacated, or called into doubt. <u>Shelton v. Sec'y, Dep't of Corr.</u>,

- 12 -

691 F.3d 1348 (11th Cir. 2012), cert. denied, 133 S.Ct. 1856 (2013). See Blake v. Sec'y, DOC, No. 3:12-cv-201-J-39JRK, 2014 WL 6673253, at *4 (M.D. Fla. Nov. 24, 2014) (noting this Court's holdings contrary to Shelton I).

As such, Petitioner is not entitled to habeas relief on ground two. In the alternative, deference under AEDPA should be given to the state court's decision. Petitioner raised the issue, and the appellate court affirmed. The state court's adjudication of this claim is not contrary to or an unreasonable application of constitutional law, or based on an unreasonable determination of the facts. Therefore, Petitioner is not entitled to habeas relief on this ground.

Accordingly, it is now

**ORDERED AND ADJUDGED:**

1. The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE.**

2. The **Clerk of the Court** shall enter judgment accordingly and close this case.

3. If Petitioner appeals the denial of his Petition, **the Court denies a certificate of appealability.**[3] Because this Court

---

[3] This Court should issue a certificate of appealability only if a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484

has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case.  Such termination shall serve as a denial of the motion.

    **DONE AND ORDERED** at Jacksonville, Florida, this 12th day of July, 2016.

_____
BRIAN J. DAVIS
United States District Judge

sa 7/8
c:
Counsel of Record

---

(2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).  Upon due consideration, this Court will deny a certificate of appealability.